Department of Veterans Affairs 2018-1073. Mr. Carpenter. May it please the court, Kenneth Carpenter on behalf of Mr. Vaughn. Let's begin directly with the question of jurisdiction. The Board of Veterans Appeals in this decision made a clear unambiguous conclusion of law that a valid debt had been created. That that the statute authorizes the VA to create a debt. The Veterans Court affirmed the board's conclusion of law and in so doing necessarily relied upon the same interpretation of 5313 that the statute authorizes the creation of a debt. If, as Mr. Vaughn contends, that section 5313 does not authorize the outcome which means that this court has jurisdiction. So this argument, it seems to me, Mr. Carpenter, that you you have a waiver problem here and I'm not sure and you're gonna have to convince me that you made this argument below. No, this argument was not made below. The argument made below relied strictly on a question of due process and the question of due process was based upon the assumption, the incorrect assumption, that 5113 was creating a lawful debt and that the right to a hearing on the question of waiver was relevant to the due process consideration for the implementation of the creation of that debt. In other words, that the hearing was part and parcel of the creative process of creating the debt. So in that argument, the statute that you mentioned was referenced. Yes. The question is whether 38 U.S.C. 5313 allows a VA to create a valid debt to an employment for overpayment of benefits, correct? Correct. That's the argument you've raised and that you're now addressing. That's correct. I don't see, where did you address that specific argument? I did not, your honor. I was not counseled below, but that previous counseled. Why isn't it waived then? Because your honor, this court's jurisdiction is implicated based upon an interpretation of a statute that was relied upon by the Veterans Court and in order to get to the Veterans Court affirmance of the board's decision even against a due process assertion. Okay, so perhaps you can argue those positions, but you can't argue this position, the one I just laid out. If you didn't raise it below, I'm having a hard time understanding how you can address it now. And I do, you're like piggybacking this argument onto something that you did argue below. Well, what was argued below was a due process argument that was You did not argue that 5313 allows a VA to create a valid debt. No, your honor, but that was the decision of the board that was appealed by the veteran and that was the decision that was affirmed by the Veterans Court. This court's jurisdiction is derived from any interpretation of any statute that was relied upon by the Veterans Court in making its decision. The decision of the Veterans Court was that Mr. Vaughn had failed to carry his burden to demonstrate an error by the Veterans Court. For a second, let's lay the jurisdiction issue aside and let's just address whether this particular issue, whether that was raised below or not, and you're saying it wasn't. It was not, your honor. Okay, so perhaps you can argue other positions or other arguments that were raised below and you have jurisdiction before this court. We can listen to that, but it seems to me that that by your statement you agree that you waived this particular argument that you're raising now. Your honor, I agree that it was not raised. I do not agree that it was waived. I do not believe that under this court's jurisdictional statute that it can be waived when the jurisdiction of this court is predicated upon whether or not the lower court did or did not rely upon an interpretation statute. Now, your honor, I may very well be wrong. I accept that as a reality, but I believe that that is a correct statement of the law and is consistent with this court's jurisprudence relative to the exercise of this court's the ultimate outcome and disposition of the appeal below. I may proceed from the jurisdictional questions to the merits. On the merits of the question of whether or not there was a misinterpretation of this statute, Congress enacted the provisions of 5313 for a singular and limited purpose in which Congress directed and authorized the VA to limit the amount of compensation that is received by a person who is incarcerated for a felony. Congress did not in any way, shape, or form authorize the VA to do anything other than to limit the amount of the full compensation to which the veteran was entitled to during the the limitation is to zero, isn't it, during the period of incarceration? I'm sorry, your honor? Isn't the limitation to zero? No, it is not. It is to 10%. So it is a functional reduction from whatever it was, in this case it was a total rating, but if it had been a 30, 40, or 50 percent rating, the veteran under this statute is entitled to retain 10% of his or her benefits. And that 10% remains Where is that provided for? I'm sorry? Where is that provided for? 10%? In the statute, your honor? It says that it shall be reduced to 10%. I don't have the statute right in front of me here. 5313? Yes, your honor. All right, if you say it's there, I'll find it. Okay, I'm sorry, it is within one of the subsections, your honor. And I don't believe that that fact is disputed by the government. In this case, the VA had the sole responsibility to determine whether or not there was an incarcerated veteran who had served 61 days, and after that 61 days, the direction of 5313... Did Mr. Vaughn share any type of responsibility? No, your honor, he does not, and the government has suggested by implication... Was he required to notify the Veterans Administration of a change of address? Only if that change of address affected the payment of his benefits that he received. No, it's a change of address. He was supposed to notify the VA if his address changed, and he gets sent to prison for a felony murder, his address has changed. He's going to be there for quite a while. He changed his address with the VA to his sister, and he has the right to do that. But he didn't change it to his prison address. No, he did not, your honor, and there is nothing in any statute that explicitly directly requires an incarcerated veteran to do that. Now, the VA would prefer that they do that so that they will know that the veteran is incarcerated, but Congress did not put any burden on any incarcerated veteran to give direct notice to the VA of their incarceration. Clearly, if that was a provision within the statute, there'd be no argument here because there would be no basis for Mr. Vaughn to evade the fact that he was responsible for notifying them, and as a result of the way in which the statute is actually written, if we stay within the four corners of the statute, the statute only imposes a burden on the secretary, and that burden is to limit or reduce the amount of compensation received during the period of incarceration. What about VA form 21-8764? That form, your honor, simply makes passing reference to the things that the VA describes as conditions affecting the right to benefits, and the right to benefits is definitely affected by being incarcerated. It does not say at the bottom of what is Appendix 102 of the record that there is any obligation on the part of the incarcerated veteran to inform the VA of that benefit, or excuse me, of their being in... I don't have that in front of me, but I think it says, please, quote, please notify this office immediately in writing or your signature of any change of address, end of quote. It says, quote, benefits will be reduced upon incarceration, end of quote. Monthly payments of your award may be stopped if you fail to furnish evidence as requested. If you furnish, if you furnish the VA or cause to be furnished any false or fraudulent evidence. Yes, your honor, but they are in two separate sections. The section that I was referring to is the explanation of the benefit reduction, and that is under a capitalized header, conditions affecting rights to benefits. Under that condition, or excuse me, above that header is the direction, the change of address notice, and it says, please notify the office immediately in writing over your signature of any change in address, which is what he did. He changed his address to his sister's address. Now, the VA is willing to... That was not his address. The address is where he wants his benefits sent to. It is not an... There is no requirement in any statute or any regulation that requires the veteran's benefits to be sent directly to the veteran's residence, or where the veteran is residing. For years, I was guardian for a number of veterans, and their benefits were sent to my office, and that is a permissible direction by the veteran for where they want their benefits sent. Sometimes, they have them sent to other relatives. Sometimes, they have them sent to spouse or other family members. So, what do you want from us, Mr. Carpenter? I want this decision reversed and set aside. I want it sent back to the veterans court for a return to the board with instructions that under the correct interpretation of 5313, the VA exceeded its authority by creating this debt. There was no lawful basis within the statute to create the debt. I'm sorry, I see that I'm into my rebuttal time. That's fine, Mr. Carpenter. We'll save it for you. Mr. Rosenberg. Thank you, Your Honor. May it please the court. The sole issue raised on appeal concerns the validity of Mr. Vaughn's debt under Section 5313, and Mr. Carpenter has acknowledged that that issue was not disputed below, and had no opportunity or reason to interpret the statute before moving on to later issues concerning the amount of the debt, the collection of the debt, and the propriety of denial of a waiver. And because the issue is not disputed, and because the veterans court did not interpret the statute in rendering its decision on those other issues, there has been no interpretation of Section 5313, which this court would have jurisdiction to review. The issues presented below concerning, again, the amount of the debt, the VA's actions in collecting the debt, any fault on the part of the parties, and the denial of the waiver are fact-bound questions which this court has held in prior decisions. It does not have jurisdiction to review. So it appears that a lot of the focus concerning fault and relative fault of the parties in the validity of the creation of the debt are an indirect or oblique attempt to litigate issues that are fact-bound which this court does not have jurisdiction to review. You're saying we should dismiss rather than affirm? Correct, Your Honor. The court does not have jurisdiction to review any interpretation of Section 5313 because there was no such interpretation by the veterans court below. But if the court did go beyond this jurisdictional argument or overlooks the waiver, the conceded, apparently, an apparently conceded waiver of the issue, the court should affirm the decision below because the veterans court correctly conclude, the board correctly concluded, and the veterans court affirmed that Mr. Vaughn's debt took effect on the 61st day of his incarceration by operation of the plain language of the statute itself. The premise of Mr. Vaughn's brief is that the statute imposes a duty on the VA alone to reduce the payments on the 61st day of incarceration. If the court looks carefully at the language of 5313a1, it is not couched in terms of a limitation on what the secretary should do or a mandate to the secretary to do anything. Instead, it is worded as a prohibition on the payment. It says that the person who receives the benefits shall not be paid. It doesn't say that the secretary shall not pay. It says that that person shall not be paid. And the focus on the word payment is what animated the court's analysis in Snyder, distinguishing between payments and debt. So under the plain language of section 5313a1, it contains the date on which the reduction in payments takes effect and the date on which the debt becomes effective. So when Mr. Vaughn wants this court or directs the court to apply section 5112, which is a statute of general application, in spite of the there's no way to square the application of that 5112 to the clear command of 5313a1. Well, how does 5313 authorize the creation of the debt? Is it simply that it says compensation shall not be paid? And if it was erroneously paid because of the fault of the veteran, then ipso facto that creates a debt? 5313 does not contain an express authorization to create a debt. What it does create is the facts necessary to determine when an overpayment is made. And all that is needed to turn an overpayment into a debt is a determined by the agency that there's been an overpayment and the money is owed. Issues concerning fault of the veteran, fault of the VA, all of those issues concerning fault can be resolved in reviewing the recovery of the debt and the denial of a waiver if a waiver is sought. And those are factual issues? Those are factual issues. How does the administration become aware that a veteran has been incarcerated? Today, the VA has information sharing agreements with both the Federal Bureau of Prisons and the Social Security Administration. If you're in federal prison, the Federal Bureau of Prisons will forward your identifying information to the VA. They will cross-reference it and the VA should be able to identify if you are in jail and receiving benefits. The Social Security Administration serves that function for state court. So the Bureau of Prisons, as part of the information collected either at a guilty plea, a plea of a verdict of guilty by a jury, the Bureau of Prisons has information like the pre-sentencing report and things like that that would indicate that the defendant is a veteran. My understanding is that personally identifying information such as a Social Security number, which would be, I presume, part of the information conveyed to the Federal Bureau of Prisons, is cross-referenced against a list of Social Security numbers or other identifying information for veterans receiving benefits. And then if there is a reason to suspect that there is a veteran in jail who is receiving benefits in spite of the commands of 5313, then communication will be made by the VA to the prison to confirm that the person is incarcerated and then the benefits would be reduced at that point. In the early 1990s, we understand that there was no information sharing agreement that would have captured Mr. Vaughn's incarceration because he was in state prison and there was no information sharing agreement in place at that time. But to the extent that there's any concern about inequity or injustice, if the VA commits an error in collecting a debt in spite of its own error under 5313, any such inequity can be handled and resolved by application of the statute and the regulations providing for the waiver of indebtedness. And the regulation provides that if it is against equity and good conscience to If the panel does not have any other questions, we would ask that the court dismiss this appeal for lack of jurisdiction or any alternative to affirm the decision below. Thank you, counsel. Thank you. Mr. Coppola has some rebuttal time if he needs it. Thank you very much, Your Honor. The government says that all that is needed to create a debt is what the government describes. Absent from that is any citation to this court in their the statute is or the regulation that authorizes them to create a debt. There is no such statute. Most importantly, there is no such statute, or excuse me, no such provision within 5313. Well, Mr. Rosenberg says the statute limits the payment. And if payment was made improperly, ipso facto there's a debt. It has to be paid back. Except that, Your Honor, ipso facto is not how debt is created. Debt is created when there is a process to identify how the debt was created. And that is what is missing within the confines of the statute. There is nothing in 5313 that makes reference to a debt, makes reference to This only happened because the VA did not know that Mr. Vaughn was incarcerated. Yet when Mr. Vaughn made application for his dependents, to have those dependents paid while he was incarcerated, his benefit less than 10%, the VA processed that application, and all of his benefits less than 10% were paid to his dependents. There was only the five-year period in which the government failed to act. How is their failure to act an ipso facto creation of a debt? There must be some affirmative action on the part of the veteran to create a debt. If we disagree with your statement that you just made, what does that do to the rest of your argument? There's nothing left, right? I'm not sure which part of your argument. We find waiver on the issue that you and I discussed. Then what's left of your argument here on appeal? If you find that there was a waiver? Yes. Then the case is over, Your Honor. I don't dispute that at all. Clearly, that's within your discretion to make that determination. I simply suggest to you that the way in which this court's jurisprudence reads, this court's jurisdiction is derived when the lower court relies necessarily upon an interpretation. If that interpretation were different, the outcome below would be different. That implicates your jurisdiction, which then gets us to the question of what 5313 does or does not provide in terms of the authority to create a debt or an overpayment. Thank you very much, Your Honors. Thank you, Mr. Coffin. We'll take the case under advisement. Thank you.